# EXHIBIT A

Filed
D.C. Superior Court
08/27/2021 16:32PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| EARTH ISLAND INSTITUTE, 2150 Allston Way, Suite 460, Berkeley, CA 94704,<br><br>       Plaintiff,<br><br>v.<br><br>BLUETRITON BRANDS, FORMERLY NESTLÉ WATERS NORTH AMERICA, 900 Long Ridge Road, Stamford, CT 06902,<br><br><br>       Defendant. | Case No. _2021 CA 003027 B_<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

On behalf of itself and the general public, and in the interest of consumers, Plaintiff Earth Island Institute, by and through its counsel, brings this action against Defendant BlueTriton Brands, formerly Nestlé Waters North America ("BlueTriton"), concerning its false and deceptive marketing representing itself as a sustainable and environmentally friendly company despite its significant and ongoing contributions to plastic pollution and its depletion of natural water resources. Earth Island Institute alleges the following based upon information, belief, and the investigation of its counsel.

## INTRODUCTION

1. Plastic pollution is a global problem and threatens human and environmental health on a massive scale.

2.      Consumers within the District and across the country believe that plastic pollution presents significant environmental harms.

3.      Due to these concerns, consumers are reevaluating their choices and the effects of their actions on the environment.

4.      Because of consumers' growing concerns about environmental harms, consumers, as BlueTriton knows, are willing to seek out services or products that are less harmful to the environment and prefer to support companies that purport to share their values, including a commitment to reducing impact on the environment.

5.      For this reason, some companies that produce significant amounts of plastic pollution are beginning to advertise themselves as environmentally friendly to counter the common consumer perception that certain industries are engaged in activities that cause environmental and human health harms.

6.      Companies that are among the largest plastic polluters are now publicly setting long-term goals to become more "sustainable," develop more effective recycling systems, and move toward a "circular economy,"[1] which would entail radically reimagining production and consumption patterns to eliminate waste.

7.      At the same time, many of these same companies continue to produce plastic waste on an immense scale, placing continued stress on natural environments and human health throughout the world.

8.      Contrary to BlueTriton's representations, the company remains a major plastic

---

[1] A circular economy "aims to redefine growth, focusing on positive society-wide benefits. It entails gradually decoupling activity from the consumption of finite resources, and designing waste out of the system" to the greatest extent possible. It is based on three broad principles: "Design out waste and pollution . . . Keep products and materials in use . . . [and] regenerate natural systems." *Concept: What is a circular economy? A framework for an economy that is restorative and regenerative by design*, Ellen MacArthur Foundation, https://www.ellenmacarthurfoundation.org/circular-economy/concept (last visited Aug. 26, 2021).

polluter, and has made no significant effort to "shape a waste-free future" or to otherwise operate as a "sustainable" enterprise.

9.       Plastic pollution is now so widespread that a 2019 study commissioned by World Wildlife Fund International estimated that the average person could be consuming upwards of 1,700 particles of plastic every week from water alone, which is equivalent to roughly an entire credit card. The study found plastic fibers in ***94.4 percent*** of tap water samples in the United States[2] and an additional study found that many bottled water brands, including Nestle Pure Life, contain ***double*** the level of microplastics found in tap water.[3]

10.      Widespread plastic pollution aligns with broader production trends: since 1950, plastic production has skyrocketed from 2.3 million tons to 448 million tons in 2015.[4]

11.      In the face of such high quantities of plastic, recycling has proven overwhelmingly insufficient in addressing global plastic pollution. A mere ***9 percent*** of all plastic that has been produced since the 1950s has been recycled, while ***79 percent*** has ended up in landfills or the natural environment.[5]  Indeed, ***six times*** more plastic is incinerated than is recycled in the United States.[6]

12.      Moreover, plastic products are inherently harmful to the environment: as a fossil-fuel based material, plastic production requires extracting, transporting, and refining fossil fuels,

---

[2] *You may be eating a credit card's worth of plastic each week: study*, Reuters (June 11, 2019, 8:07 PM), https://www.reuters.com/article/us-environment-plastic/you-may-be-eating-a-credit-cards-worth-of-plastic-each-week-study-idUSKCN1TD009.

[3] David Common & Eric Szeto, *Microplastics found in 93% of bottled water tested in global study*, CBC News (Mar. 14, 2018), https://www.cbc.ca/news/science/bottled-water-microplastics-1.4575045.

[4] *Talking Trash: The Corporate Playbook of False Solutions to the Plastic Crisis*, Talking Trash (Sept. 2020), https://talking-trash.com/wp-content/uploads/2020/09/TalkingTrash_FullReport.pdf.

[5] *Id.* Plastic enters the natural world at a rate of 8 million tons per year, or approximately one garbage truck per minute. *Id.*

[6] Jan Dell, *Six Times More Plastic Waste is Burned in U.S. than is Recycled*, Plastic Pollution Coalition (Apr. 30, 2019),  https://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-us-than-is-recycled.

processes which often emit significant amounts of greenhouse gases into the atmosphere and exacerbate the already-pronounced greenhouse gas effect.

13.     BlueTriton has done relatively very little to address the immense problem of plastic pollution and continues to represent to consumers that recycling mitigates the environmental harm of its plastic production and use.

14.     Furthermore, BlueTriton and its predecessor Nestlé Waters North America have been subject to numerous lawsuits regarding the company's depletion of natural water resources and unauthorized water diversion.[7]

15.     Consequently, BlueTriton, in its harmful water extraction practices and its proliferation of single-use plastic, is not a truly "sustainable" company.

16.     No reasonable consumer who sees BlueTriton's representations would expect the steps that BlueTriton is taking to combat plastic pollution to be so insignificant relative to the scale at which its plastic pollution occurs or that the company is draining valuable natural water resources.

17.     By misrepresenting the nature and quality of its products and the nature of its underlying business practices, BlueTriton is able to capture the growing market of D.C. consumers who are concerned about plastic pollution and seek to support environmentally friendly businesses.

18.     BlueTriton's false and misleading representations and omissions violate the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq*.

19.     Because BlueTriton's marketing and advertising tend to mislead and are materially deceptive about the true nature and quality of its products and business, Earth Island Institute

---

[7] Jacey Fortin, *Facing Droughts, California Challenges Nestlé Over Water Use*, The New York Times (Apr. 29, 2021), https://www.nytimes.com/2021/04/29/us/nestle-water-california.html (noting the company is facing similar challenges in Florida and Michigan as well as California).

brings this deceptive advertising case on behalf of itself and the general public pursuant to the CPPA.

## STATUTORY FRAMEWORK

20.    This action is brought under the District of Columbia Consumer Protection Procedures Act ("CPPA") D.C. Code § 28-3901, *et seq*.

21.    The CPPA makes it a violation for "any person" to, *inter alia*:

Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

Represent that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are of another;

Misrepresent as to a material fact which has a tendency to mislead;

Fail to state a material fact if such failure tends to mislead;

Use innuendo or ambiguity as to a material fact, which has a tendency to mislead; or

Advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

D.C. Code § 28-3904(a), (d), (e), (f), (f-1), (h).

22.    A violation occurs regardless of "whether or not any consumer is in fact misled, deceived or damaged thereby." *Id.*

23.    The CPPA "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia." *Id.* § 28-3901(c). It "shall be construed and applied liberally to promote its purpose." *Id.*

24.    Because Earth Island Institute is a public-interest organization, it may act on behalf of the general public and bring any action that an individual consumer would be entitled to bring:

> [A] public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice.

*Id*. § 28-3905(k)(1)(D)(i). Subparagraph (A) provides: "A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District."

25.     A public-interest organization may act on behalf of consumers, *i.e.*, the general public of the District of Columbia, so long as the organization has a "sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." *Id*. § 28-3905(k)(1)(D)(ii). As set forth in this Complaint, *see infra* ¶¶ 27-36, Plaintiff Earth Island Institute's mission includes educating consumers, including in the District of Columbia, and engaging in advocacy related to environmental and human health issues. Earth Island Institute thus has a sufficient nexus to D.C. consumers to adequately represent their interests.

26.     This is not a class action, or an action brought on behalf of any specific consumer, but an action brought by Earth Island Institute on behalf of the general public, *i.e.*, D.C. consumers generally. No class certification will be requested.

27.     This action does not seek damages. Instead, Earth Island Institute seeks to end the unlawful conduct directed at D.C. consumers. Remedies available under the CPPA include "[a]n injunction against the use of the unlawful trade practice." *Id*. § 28-3905(k)(2)(D). Earth Island Institute also seeks declaratory relief in the form of an order holding BlueTriton's conduct to be unlawful.

## PARTIES

28.     Plaintiff Earth Island Institute is a 501(c)(3) non-profit, public-interest organization whose mission is to advocate for environmental and human health through activist projects, legal advocacy, leadership, and an award-winning journal.

29.     Earth Island Institute is based in Berkeley, California and performs its work throughout the United States, including in the District of Columbia.

30.     Earth Island Institute was founded in 1982 as a non-profit organization meant to inform the public about salient environmental harms and has since worked, among other things, to protect marine life; confront plastic pollution; preserve forests; help indigenous leaders protect their sacred sites; and restore wetlands.

31.     As part of its mission, Earth Island Institute acts as a fiscal sponsor to projects that counteract threats to the biological and cultural diversity that sustains the environment.

32.     Projects that are fiscally sponsored by Earth Island Institute are legally part of Earth Island Institute. All project assets belong to Earth Island Institute and a project's staff are employees of Earth Island Institute.

33.     One of Earth Island Institute's fiscally sponsored projects is Plastic Pollution Coalition ("PPC").

34.     PPC is a global alliance of more than 1,200 organizations, businesses, and thought leaders working towards a more just and equitable world free of plastic pollution and its toxic impacts on humans, animals, waterways, oceans, and the environment.

35.     PPC advocates for a transition away from single-use plastic and educates consumers, including those within the District of Columbia, on the environmental and health impacts of single-use plastic across its entire life cycle as well as alternatives to single-use plastic.

PPC's efforts help consumers make informed choices when they shop. PPC's website, public education, research, network building, and mobilization activities provide an important service to consumers and community activists.

36.     Earth Island Institute, including PPC, has a strong interest in truth-in-advertising regarding environmental concerns. The organization diligently works to promote ecological systems that are clean, accessible, and free of contamination.

37.     Consequently, Earth Island Institute, through PPC's work, has a sufficient nexus to consumers of BlueTriton's services to adequately represent those interests.

38.     Defendant BlueTriton Brands formerly operated as Nestlé Waters North America,[8] one of the largest plastic-producing companies in the world, and owns a variety of beverage brands including: Poland Spring® Brand 100% Natural Spring Water ("Poland Spring"), Deer Park® Brand 100% Natural Spring Water ("Deer Park"), Ozarka® Brand 100% Natural Spring Water ("Ozarka"), Ice Mountain® Brand 100% Natural Spring Water, Zephyrhills® Brand 100% Natural Spring Water ("Zephyrhills"), Arrowhead® Brand Mountain Spring Water ("Arrowhead"), Pure Life® ("Pure Life"), and Splash.

39.     At all times mentioned herein, BlueTriton was and is a privately held company headquartered in Stamford, Connecticut. Defendant was and is, at all relevant times, engaged in commercial transactions throughout the District of Columbia.

40.     BlueTriton markets and sells its products and services in the District of Columbia and throughout the United States.

41.     Upon information and belief, BlueTriton has caused harm to the general public of

---

[8] Nestlé Waters North America was acquired by One Rock Capital Partners, LLC and Metropoulos & Co. on March 31, 2021. Nestlé Waters North America announced shortly thereafter that it would begin operating as BlueTriton Brands.

the District of Columbia.

42.    Earth Island Institute is acting on behalf of itself and for the benefit of the general

public as a private attorney general pursuant to D.C. Code § 28-3905(k)(1). Earth Island Institute

is a public-interest organization pursuant to D.C. Code § 28-3901(a)(15).

## FACT ALLEGATIONS

43.    BlueTriton's marketing is false and deceptive because the company portrays itself

as being sustainable and committed to reducing plastic pollution through its recycling targets while

falling short of those targets and continuing its environmentally harmful practices.

44.    BlueTriton knows that consumers increasingly and deliberately seek out products

and services from environmentally responsible companies.[9]

45.    Accordingly, BlueTriton cultivates an environmentally friendly image for

consumers who wish to avoid harming our planet in order to motivate climate-concerned

consumers to continue to purchase its products and services.

### A.    BlueTriton Represents That it is a "Sustainable" Company Striving for a "Waste-Free Future."

46.    BlueTriton purports to be an environmentally friendly and "sustainable" company

that is proactively working to prevent plastic pollution.

47.    BlueTriton's executives acknowledge that these sustainability representations are

designed to appeal to environmentally conscious consumers.

48.    Yumiko Clevenger-Lee, Vice President and Chief Marketing Officer of Nestlé

Waters North America (now BlueTriton) stated that "[b]y embedding sustainability into the

---

[9]    *See, e.g., The Sustainability Imperative*, Nielsen (Oct. 12, 2015), https://nielseniq.com/global/en/insights/analysis/2015/the-sustainability-imperative-2/ (consumer survey finding that the majority of consumers seek to support sustainable business practices with their purchases and are more likely to buy products "from a company known for being environmentally friendly.").

foundation of our brands, we are able to deliver a superior product experience that also aligns with what our consumers want . . ."[10]

49.     Further, in its re-branding, BlueTriton acknowledges that it is specifically trying to portray itself as a sustainable company and that its new logo reflects its "role as a guardian of sustainable resources."[11]



50.     In BlueTriton's April 2021 press release following its parent companies' acquisition of Nestlé Waters North America, the company makes further unqualified statements regarding its sustainability.

51.     For example, BlueTriton represents that it will "continue to support the Company's commitment to being at the forefront of *sustainable water management*, *advancing recycling and waste reduction*" and will continue "a longstanding commitment to environmental leadership . . ."[12]

---

[10] *Nestle Waters North America Expands Use of 100% Recycled Plastic (rPET) in Three Additional Brands, Doubles rPET Use across U.S. Domestic Portfolio,* Nestlé Waters North America (July 16, 2020), https://www.nestle-watersna.com/media/pressreleases/allpressreleases/expanding-use-of-recycled-plastic.
[11] @bluetritonbrands, Instagram (May 26, 2021), https://www.instagram.com/p/CPVmPJIlOFn/.
[12] *Nestlé Waters North America Becomes BlueTriton Brands,* BlueTriton (April 6, 2021), https://www.nestle-watersna.com/media/pressreleases/allpressreleases/nestle-waters-north-america-becomes-bluetriton-brands.

52.     On its "Sustainability" website, Pure Life (one of BlueTriton's brands) represents that it "consider[s] the principles of sustainability" in its business practices.[13]

53.     BlueTriton states that it is "committed to water stewardship, responsible packaging and minimizing the environmental impact associated with [its] operations."[14]

54.     The company also alleges that "at its core, [it] cares about water . . . and [is] committed to water management that is environmentally sustainable."[15]

55.     Beyond "considering" and being "committed" to sustainability, BlueTriton represents that it is accountable for its environmental impact: "A commitment to environmental sustainability means being accountable for the impact we have on our planet. We see our role in protecting the future as making the right choices . . . . Our aim is to use sustainably managed and renewable resources as efficiently as possible . . ."[16]

56.     On its website, BlueTriton also represents that it is "Striving For A Waste-Free Future"[17] and that it is working to "help reach[] a circular economy"[18] through its packaging.

**B.     BlueTriton Presents Recycling as an Unqualified Solution to its Ongoing Plastic Pollution.**

57.     In addition to its general "sustainability" representations, BlueTriton makes a number of specific claims regarding its recycling practices and their allegedly positive impact on the environment.

---

[13] *Sustainability*, Nestlé Pure Life, https://www.nestlepurelife.com/us/en-us/sustainability (last visited Aug. 27, 2021).

[14] *Our Commitment to the Environment*, BlueTriton, https://www.nestle-watersna.com/planet (last visited Aug. 27, 2021).

[15] *Water Stewardship*, BlueTriton, https://www.nestle-watersna.com/planet/water-stewardship (last visited Aug. 27, 2021).

[16] *Our Environmental Impact*, BlueTriton, https://www.nestle-watersna.com/planet/sustainable-operations/our-environmental-impact (last visited Aug. 27, 2021).

[17] *Striving for a Waste Free Future*, BlueTriton, https://www.nestle-watersna.com/planet/sustainable-operations/our-environmental-impact/landfill-free (last visited Aug. 27, 2021).

[18] *Packaging*, BlueTriton, https://www.nestle-watersna.com/planet/packaging (last visited Aug. 27, 2021).

58.     For example, a number of BlueTriton brands, including Poland Spring, Ozarka, and Zephyrhills Water market their products as reusable, claiming that "We use #1 PET plastic, which can be recycled over and over and over again!"[19]

59.     These websites also represent to consumers that their plastic products can be kept out of landfills by recycling, stating that, while less than 30% of their plastic bottles are recycled and "the rest likely end up in landfills . . . [s]ome in oceans[,]" it "doesn't have to be this way. Together, we can make a change."[20]

60.     Pure Life, another brand owned by BlueTriton, advertises that it has reduced its plastic pollution and increased their recyclability: "Since 2005 we've reduced the amount of plastic in our 0.5 liter bottles by over 40%. What's more - all of our bottles are 100% recyclable. Once recovered and sent to a recycler, our bottles are cleaned, dried and melted into pellets (called nurdles) and can be used for new bottles and all sorts of new, reusable things."[21]

61.     While acknowledging the "recycling gap" in the United States, Pure Life represents that it is countering this problem by investing in the Closed Loop Fund: "We are on a deliberate journey to ensure recyclable materials are collected and recycled. The PET bottle is a valuable resource that can be reused over and over, but the systems needed to do this in the US are limited. That is why, in 2017, we committed to invest a total of $6 million in the Closed Loop Fund."[22]

---

[19] *Journey from the Source*, Poland Spring, https://www.polandspring.com/journey-from-the-source (last visited Aug. 27, 2021); *Journey from the Source,* Ozarka Water, https://www.ozarkawater.com/journey-from-the-source (last visited Aug. 27, 2021) *Journey from the Source*, Zephyrhills Water, https://www.zephyrhillswater.com/journey-from-the-source (last visited Aug. 27, 2021).

[20] *Id.*

[21] *Sustainability*, Nestlé Pure Life, https://www.nestlepurelife.com/us/en-us/sustainability (last visited Aug. 27, 2021).

[22] *Id.*

62.     Another BlueTriton brand, Deer Park, represents that their plastic design innovations make their packaging "more environmentally friendly."[23]

63.     Further, Deer Park advertises that its recyclable bottles are environmentally beneficial as they help "keep plastic out of landfills" because the company "care[s] about you & our planet"[24]



64.     As noted above, BlueTriton represents that its recycling efforts help to create a "circular economy" that mitigates the damages of its ongoing plastic pollution.

65.     David Tulauskas, while acting as the Vice President and Chief Sustainability Officer of Nestlé Waters North America (now BlueTriton), stated that the company has "made significant strides on [its] journey to use more sustainable packaging" and "Bottles made with other bottles – like these – provide tangible proof that recycling works and the circular economy

---

[23] *Safety and Handling,* Deer Park Water, https://www.deerparkwater.com/safety-and-handling (last visited Aug. 27, 2021).
[24] *Discover Deer Park*, Deer Park Water, https://www.deerparkwater.com/commercial (last visited Aug. 27, 2021).

for plastics is achievable. By using recycled plastic, we are breathing new life into existing materials, reducing the need for new plastic and our carbon footprint . . ."[25]

66.     On its Instagram page, BlueTriton again represents that recycling its plastic products can help lessen their environmental harm and "keep [the plastic] out of landfills, waterways, and oceans."[26]



67.     The various claims highlighted here give consumers the impression that BlueTriton is taking unprecedented and serious steps to mitigate and be held "accountable" for its own plastic pollution; increase recycling rates; and ultimately reimagine patterns of plastic consumption by developing new bottle technology.

**C.      BlueTriton's Practices Are Unsustainable and Environmentally Harmful.**

68.     Contrary to BlueTriton's representations, the company is far from what consumers would understand to be a sustainable and environmentally friendly business.

69.     BlueTriton's immense plastic contributions are intrinsically damaging to the environment.

---

[25] *Nestle Waters North America Expands Use of 100% Recycled Plastic (rPET) in Three Additional Brands, supra* note 10.

[26] @nestlewatersna, Instagram (July 16, 2020), https://www.instagram.com/p/CCtVDiRleOj/.

70. BlueTriton includes the top selling bottled water brands in the United States and their sales account for roughly 1/3 of the U.S. bottled water market, and likely contribute hundreds of millions of pounds of plastic to U.S. landfills each year.[27]

71. The entire life cycle of plastic presents serious risks to human health, and has been shown to contribute to cancer, neurotoxicity, reproductive issues, endocrine disruption, and genetic problems.[28]

72. Plastic pollution also presents an unprecedented crisis for wildlife throughout the world. Many animals (and especially marine life) ingest large quantities of plastic materials that enter the natural environment, wreaking havoc on their digestive systems and overall health.

73. A study from 2014 found that over 270 marine species have experienced impaired movement, starvation, or death due to ingestion or entanglement in plastic debris.[29]

74. Furthermore, plastics have incredibly carbon-intensive life cycles.[30]

75. Plastic production requires fossil fuel extraction and distillation; plastic products themselves are constituted from fossil fuels, and after production must be transported to market.[31]

76. Additionally, dumping, incinerating, recycling, or composting (certain) plastics all release carbon dioxide ($CO_2$), a powerful greenhouse gas.[32]

---

[27] *All Bottled Up: Nestle's Pursuit of Community Water*, Food and Water Watch (Jan. 2009), https://www.bark-out.org/sites/default/files/bark-docs/Nestle_-_All_Bottled_Up.pdf.

[28] *Talking Trash, supra* note 3.

[29] Michelle Sigler, *The Effects of Plastic Pollution on Aquatic Wildlife: Current Situations and Future Solutions*, Water Air Soil Pollution (Oct. 18, 2014), https://projectdragonfly.miamioh.edu/wp-content/uploads/2019/06/Sigler_Michelle_Water-Air-Soil-Pollut_2014.pdf.

[30] *Plastic's carbon footprint: Researchers conduct first global assessment of the life cycle greenhouse gas emissions from plastics*, Science Daily (Apr. 15, 2019), https://www.sciencedaily.com/releases/2019/04/190415144004.htm.

[31] *Id.*

[32] *Id.*

77.     Researchers at the University of California, Santa Barbara found that in 2015, life cycle emissions from plastics were equivalent to nearly *1.8 billion metric tons* of $CO_2$.[33]

78.     Plastics' reliance on limited and environmentally harmful fossil fuel resources precludes the materials from ever being truly sustainable, particularly on the large scale at which BlueTriton's plastic use operates.

79.     BlueTriton also continues its predecessor's harmful water depletion practices, robbing communities of valuable natural water resources and contributing to the current widespread environmental crises of drought and water scarcity, particularly in the Western United States.[34]

80.     The company is currently fighting a Cease & Desist order issued by California's State Water Resources and Control Board regarding its unauthorized water extractions in the San Bernardino Valley.[35]

81.     These extractions have left some of these bodies of water "impaired" and "the current water extraction is drying up surface water resources," contributing to a struggling environment.[36]

82.     Therefore, BlueTriton is categorically not a sustainable company and misleads consumers in presenting itself as such. The company produces a vast amount of plastic pollution, contributes to natural water depletion, and fails to take responsibility for its own waste, despite its representations to the contrary.

---

[33] *Id.*

[34] *See Facing Droughts, California Challenges Nestlé Over Water Use, supra* note 7.

[35] Marry Ellen Shoup, *Nestlé Waters/ BlueTriton Brands ups ante in California spring water spat*, Food Navigator (Apr. 26, 2021), https://www.foodnavigator-usa.com/Article/2021/04/26/Nestle-Waters-North-America-told-to-cease-unauthorized-water-diversions-in-California.

[36] Tom Perkins, *The fight to stop Nestlé from taking America's water to sell in plastic bottles*, The Guardian (Oct. 29, 2019), https://www.theguardian.com/environment/2019/oct/29/the-fight-over-water-how-nestle-dries-up-us-creeks-to-sell-water-in-plastic-bottles.

### (i) Recycling is Not an Unqualified Solution to Plastic Pollution.

83.     BlueTriton advances recycling as a straightforward solution to plastic pollution and represents that through recycling "we can make a change" to the endemic of plastic in landfills and oceans.

84.     However, reports have found that BlueTriton consistently falls short of its recycling promises.

85.     For example, according to Changing Markets Foundation's 2020 report, "Talking Trash: The Corporate Playbook of False Solutions to the Plastic Crisis," Nestlé Waters North America (now BlueTriton) committed in 2008 to doubling recycling targets for PET bottles to 60% by 2018.[37] By that deadline, its recycling rate was only 28.9%—less than half of its goal.

86.     In fact, its average rate of recycling over the past ten years is a mere 29.6%.[38]

87.     Thus, as the "Talking Trash" report highlights, "[v]oluntary efforts from major plastic polluters consistently fail to meet the levels of ambition required to tackle the problem at the source."[39]

88.     Moreover, as it exists right now, recycling infrastructure in the United States is incapable of keeping pace with BlueTriton's incredibly high production rates.

89.     And despite BlueTriton's heavy emphasis on recycling in its advertising and online representations, the vast majority of its bottles end up in landfills or entering the natural environment as pollution.

---

[37] *Talking Trash*, *supra* note 4.
[38] *Id.*
[39] *Id.*

90.     The EPA estimated that in 2018 only 8.7 percent of all recyclable plastics in the United States were recycled, with a rate among PET bottles and jars of 29.1 percent.[40]

91.     Low rates of recycling mean that an immense amount of recyclable plastic ends up in landfills or enters the natural environment.[41]

92.     The EPA estimated that landfills in the United States received ***27 million tons of plastic*** in 2018.[42] The figure below[43] illustrates the relative share of plastics that are recycled versus those that enter landfills each year:



93.     And out of the many categories of plastics, containers and packaging (which includes the PET bottles that BlueTriton produces) accounted for ***more than half*** of the plastics that ended up in landfills.[44]

94.     More generally, BlueTriton greatly overstates the efficacy of recycling in addressing the plastics crisis as well as its own contributions to improving recycling rates.

---

[40] *Facts and Figures about Materials, Waste and Recycling*, United States Environmental Protection Agency, https://www.epa.gov/facts-and-figures-about-materials-waste-and-recycling/plastics-material-specific-data   (last visited Aug. 27, 2021).

[41] *Talking Trash*, *supra* note 4.

[42] *Facts and Figures About Materials, Waste and Recycling*, *supra* note 40.

[43] *Id.*

[44] *Id.*

95.    The plastics industry has known that plastics are both environmentally and economically unsustainable for over forty years.

96.    NPR reported in September 2020 that a plastic industry insider wrote in a speech in 1974 that "There is serious doubt that [recycling plastic] can ever be made viable on an economic basis."[45]

97.    Despite the well-publicized shortcomings of recycling, BlueTriton and other large plastic producers have consistently pushed recycling as an unqualified solution to the plastics crisis since the 1970s.

98.    Larry Thomas, former president of the Society of the Plastics Industry (today known as the Plastics Industry Association) told NPR: "If the public thinks that recycling is working, then they are not going to be as concerned about the environment."[46]

99.    BlueTriton's recycling advertisements aim to assuage consumers' growing concerns about the environmental harms associated with the company's business, convincing consumers that there are no significant environmental consequences associated with purchasing single-use plastic as long as they dispose of the material in a responsible manner.

100.    But a very small portion of plastic materials are recycled, even if consumers dispose of them properly.

101.    As previously noted, only approximately 30 percent of PET bottles were recycled in 2018 in the United States.[47]

---

[45] Laura Sullivan, *How Big Oil Misled The Public Into Believing Plastic Would Be Recycled*, NPR (Sept. 11, 2020, 5:00 AM ET), https://www.npr.org/2020/09/11/897692090/how-big-oil-misled-the-public-into-believing-plastic-would-be-recycled; John Hocevar, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastics Recyclability*, Greenpeace (Feb. 18, 2020), https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf.
[46] *Id.*
[47] *Facts and Figures about Materials, Waste and Recycling*, *supra* note 40.

102.    There are various factors that contribute to the United States' notoriously low recycling rate. In large part, the economics of plastic production and recycling drive low recycling rates; it is far cheaper to produce virgin plastic than to pay for the various processes required to recycle existing plastic in the United States.[48]

103.    An article in the New York Times from March 2019 reported that hundreds of towns and cities throughout the United States have cancelled their recycling programs, limited the types of materials they accepted, or agreed to substantial price increases to continue their recycling programs.[49]

104.    The changes to recycling prices came in large part from China's decision to bar plastics slated for recycling from entering the country in January of 2018; prior to that point, the United States had been exporting hundreds of thousands of tons of recyclable materials each year to China.[50]

105.    Waste management companies and municipalities have since been struggling to find buyers for recyclable materials, and it is often more economical for them to send recyclable materials to landfills rather than pay to sort, clean, shred, and melt them for reuse.[51]

106.    More recently, the global COVID-19 pandemic decreased the cost of fossil fuels, exacerbating the difference in cost between virgin plastic and recycled plastic.

---

[48] Laura Sullivan; John Hocevar, *supra* note 45.

[49] Michael Corkery, *As Costs Skyrocket, More U.S. Cities Stop Recycling*, The New York Times (Mar. 16, 2019), https://www.nytimes.com/2019/03/16/business/local-recycling-costs.html.

[50] *Id;* Christopher Joyce, *Where Will Your Plastic Trash Go Now That China Doesn't Want It?*, NPR (Mar. 13, 2019, 4:28 PM ET), https://www.npr.org/sections/goatsandsoda/2019/03/13/702501726/where-will-your-plastic-trash-go-now-that-china-doesnt-want-it; John Hocevar, *supra* note 45.

[51] Alana Semuels, *Is This the End of Recycling?*, The Atlantic (Mar. 5, 2019), https://www.theatlantic.com/technology/archive/2019/03/china-has-stopped-accepting-our-trash/584131/.

107.    A market analysis at the Independent Commodity Intelligence Services estimated that as of October 2020, it was approximately **83 percent to 93 percent more expensive** to use recycled bottle-grade plastic than to produce it new.[52]

108.    Plastic also degrades with each use, leaving each bottle of recycled plastic of a lesser quality than its former iteration.[53]

109.    All of these traits stand in contrast to BlueTriton's representations that recycling PET bottles is a clear-cut solution to the plastics crisis.

110.    In a February 2020 report published by Greenpeace, marine biologist and director of the organization's oceans campaign John Hocevar wrote that "Companies must move beyond the outdated, failed approach of promoting recycling as the solution to excessive plastic waste and pollution. . . . Instead of pretending that the trillions of throwaway plastic items produced each year will be recycled or composted, we must stop producing so many of them in the first place."[54]

111.    BlueTriton has established no strategy to meaningfully reduce its plastic pollution footprint and misrepresents its contributions to improving recycling processes throughout the United States, as well as exaggerates the role of recycling in addressing global plastic pollution more broadly.

112.    BlueTriton has also repeatedly failed to take responsibility for its own plastic waste through supporting organizations that place undue emphasis on individual consumers' role in the global plastics crisis.

---

[52] Joe Brock, *Special Report: Plastic pandemic – COVID-19 trashed the recycling dream,* Reuters (Oct. 5, 2020, 7:13 AM), https://www.reuters.com/article/health-coronavirus-plastic-recycling-spe-idUSKBN26Q1LO.
[53] *Id.*
[54] John Hocevar, *supra* note 45.

113.    For example, BlueTriton (through its predecessor Nestlé Waters North America) has long held ties to the organization, Keep America Beautiful, a pro-recycling organization founded in the early 1950s by several prominent plastics producers and citizens.

114.    Keep America Beautiful lists various corporate sponsors on its website, including Nestlé Waters North America, Coca-Cola, Keurig, Dr. Pepper, and other prominent plastic-producing companies.[55]

115.    According to the Keep America Beautiful website, the organization's mission is "To inspire and educate people to take action every day to improve and beautify their community environment."[56]

116.    Since its inception, Keep America Beautiful has worked to achieve its mission by placing outsize emphasis on the role of individual consumers in reducing plastic pollution, rather than addressing the source of plastic itself—the producers.

117.    Starting with advertisements produced in collaboration with the Ad Council in 1960, Keep America Beautiful has advanced taglines such as "Every litter bit hurts," and "Don't be a litterbug."[57]

118.    Its most recent campaign, "I Want To Be Recycled," offers tips on how to become an "everyday" recycler and help to divert waste from entering into landfills.

---

[55] *Our Partners*, Keep America Beautiful, https://kab.org/about/partners/?field_partner_type_tid=28 (last visited Aug. 27, 2021).
[56] *Mission & History*, Keep America Beautiful, https://kab.org/about/approach/mission-history/ (last visited Aug. 27, 2021).
[57] Jane L. Levere, *After the 'Crying Indian,' Keep America Beautiful Starts a New Campaign*, The New York Times (July 16, 2013), https://www.nytimes.com/2013/07/17/business/media/decades-after-a-memorable-campaign-keep-america-beautiful-returns.html.

119.    This campaign fails to acknowledge, however, that a significant portion of recyclable materials from its sponsors—regardless of whether consumers dispose of them correctly—end up in landfills or the natural environment.[58]

120.    In tying its brand to Keep America Beautiful, BlueTriton has contributed to misleading the public into believing that everyday consumers are to blame for the plastics crisis, rather than insufficient recycling infrastructure and the corporations producing the plastics.

121.    BlueTriton does very little to be "accountable" for the plastic waste that it produces and continues to place outsize responsibility on individual consumers for plastic pollution through campaigns such as those that Keep America Beautiful promotes.

122.    Furthermore, recycling is an extremely limited approach to curbing the vast amount of plastic waste that is entering landfills and the natural environment.

123.    BlueTriton misleads consumers by overstating the benefits of recycling, as well as the capacity and ability of waste management companies and municipalities to economically recycle the large amount of PET bottle waste that companies such as BlueTriton produce.

124.    In reality, recycling rates are subject to various factors, including economic viability, the infrastructure and capacity of the applicable recycling facilities, and the inability of recycling facilities to recycle more novel forms of packaging, such as bottles with sleeves.[59]

125.    In marketing its products as unqualifiedly "recyclable," BlueTriton's messaging to consumers obfuscates these complexities and how they affect recycling rates, and in turn, the sustainability of BlueTriton's products.

---

[58] Livia Albeck-Ripka, *Your Recycling Gets Recycled, Right? Maybe, or Maybe Not*, The New York Times (May 29, 2018), https://www.nytimes.com/2018/05/29/climate/recycling-landfills-plastic-papers.html.

[59] John Hocevar, *supra* note 45.

### D.     BlueTriton's Representations Are Material and Misleading to Consumers.

126.     BlueTriton's false and misleading representations about the degree to which its business is sustainable are material to consumers.

127.     Consumers care deeply about environmental issues and are more likely to purchase products that they perceive as environmentally friendly.[60]

128.     A 2019 study conducted by Coleman Parkes Research on behalf of Accenture surveyed 1,500 consumers in seventeen cities throughout the United States. Forty-seven percent of consumers surveyed expressed a desire to conduct business with retailers that were environmentally conscious.[61]

129.     The desire for sustainable products is especially pronounced among younger consumers; a study from the International Trademark Association from 2018 found that 89 percent of internet users ages 18 to 23 felt that brands should aim to do good in the world.[62]

130.     BlueTriton's business practices fall far short of what consumers would expect from a "sustainable" company. Its advertising strategies mislead consumers into believing that BlueTriton prioritizes environmental health, capturing a growing class of consumers who wish to support environmentally sustainable companies.

131.     Moreover, Federal guidance and consumer research show that BlueTriton's sustainable representations suggest to consumers that its products are sourced in accordance with high environmental standards.

---

[60] *The Sustainability Imperative*, *supra* note 9.
[61] Lucy Koch, *Sustainability Is Factoring into 2019 Holiday Purchases*, eMarketer (Oct. 14, 2019), https://www.emarketer.com/content/sustainability-is-factoring-into-2019-holiday-purchases?_ga=2.170357734.731468461.1617378067-462530432.1615825431.
[62] *Id.*

132.     The Federal Trade Commission ("FTC") has determined that unqualified general environmental benefit claims such as "sustainable" "imply certain specific environmental benefits."[63] For that reason, the FTC has admonished companies not to use unqualified claims such as "sustainable" due to its determination that "it is highly unlikely that they can substantiate all reasonable interpretations of these claims."[64]

133.     Indeed, as demonstrated *supra* Section C, BlueTriton is unable to substantiate its claims that it is a "sustainable" company dedicated to "water stewardship" and "creating a waste-free future" thereby misleading the many consumers who attempt to make purchasing decisions in line with their desire to be more environmentally conscious.

## JURISDICTION AND VENUE

134.     This Court has personal jurisdiction over the parties in this case. Plaintiff Earth Island Institute, by filing this Complaint, consents to this Court having personal jurisdiction over it.

135.     This Court has personal jurisdiction over Defendant BlueTriton pursuant to D.C. Code § 13-423. Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over it because, *inter alia*, BlueTriton is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia, or otherwise purposefully avails itself of the laws of this District through its marketing and sales of its products and services in this District.

136.     This Court has subject matter jurisdiction over this action pursuant to D.C. Code §§ 28-3905(k)(1)(B), (k)(1)(D), and (k)(2).

---

[63] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/press-releases/2019/03/ftc-sends-warning-letters-companies-regarding-diamond-ad; *see also* FTC Green Guides, 16 C.F.R. § 260.4(b) (2012).
[64] *Id.*

## CAUSE OF ACTION

### *Violations of The District of Columbia Consumer Protection Procedures Act*

137.     Pursuant to D.C. Code §§ 28-3905(k)(1) and 28-3905(k)(2), Plaintiff Earth Island Institute brings this Count against BlueTriton on behalf of itself, its members, and the general public of the District of Columbia, for BlueTriton's violation of the CPPA, D.C. Code § 28-3901, *et seq.*

138.     Plaintiff incorporates by reference all the allegations in the preceding paragraphs of this Complaint.

139.     BlueTriton represents itself as a sustainable company while significantly contributing to plastic pollution and depleting natural resources.

140.     BlueTriton's advertising misrepresents, tends to mislead, and omits facts regarding the characteristics, standard, quality, and grade of its business practices and the products and services it sells.

141.     BlueTriton's products, services, and business practices lack the characteristics, benefits, standards, qualities, or grades that BlueTriton states and implies in its advertisements.

142.     BlueTriton knowingly did not sell its products and services as advertised.

143.     The facts, as alleged above, demonstrate that BlueTriton has violated the CPPA, D.C. Code § 28-3901 *et seq.* Specifically, BlueTriton has violated D.C. Code § 28-3904, which makes it an unlawful trade practice to:

> (a)     represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

> (d)     represent that goods or services are of particular standard, quality, grade,

style, or model, if in fact they are of another;

    (e)    misrepresent as to a material fact which has a tendency to mislead; . . .

    (f)    fail to state a material fact if such failure tends to mislead;

    (f-1)    [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; . . . [or]

    (h)    advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

144.    The CPPA makes such conduct an unlawful trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904.

145.    Plaintiff Earth Island Institute need not show proof of deception to succeed on its CPPA claim; nevertheless, upon information and belief, consumers were, in fact, deceived.

146.    Earth Island Institute has a sufficient nexus to consumers of BlueTriton's products and services to adequately represent those interests.

147.    Because BlueTriton misrepresents the characteristics and benefits of the products it provides; misrepresents the standard, quality, and grade of the products; and advertises its products and services without the intent to provide them as advertised, BlueTriton's marketing of its services violates D.C. Code §§ 28-3904(a), (d), (e), (f), (f-1), and (h).

148.    BlueTriton is a "person" within the meaning of D.C. Code § 28-3901(a)(1), a merchant under § 28-3901(a)(3), and provides "goods and services" within the meaning of § 28-3901(a)(7).

149.    Any consumer has the right to bring an action for redress of BlueTriton's unlawful behavior, *see* D.C. Code § 28-3905(k)(1)(A), and the statute does not limit consumer plaintiffs according to whether they purchased the product at issue. Nevertheless, as alleged in this

Complaint, the plastic products are marketed and provided in the District, and consumers within the District have obtained these products under the misrepresentations made by BlueTriton. Therefore, a variety of purchasing and non-purchasing consumers could bring an action against BlueTriton based on the misrepresentations and omissions listed in this Complaint.

150.    Pursuant to D.C. Code § 28-3905(k)(1)(D)(i), "a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."

151.    The only limitation on this power of a public interest organization to act on behalf of consumers is that the public interest organization must have "sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." D.C. Code § 28-3905(k)(1)(D)(ii). As set forth in this Complaint, *see supra* ¶¶ 27-36, Earth Island Institute was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of environmental responsibility. In addition, Earth Island Institute has retained the undersigned competent counsel, who have significant experience in litigating under the CPPA, to pursue this action.

152.    Via § 28-3905(k)(1)(D)(i), the CPPA allows for public interest organizational standing to the fullest extent recognized by the D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

153.    Earth Island Institute is a "person" within the meaning of D.C. Code § 28-3901(a)(1) and a "public interest organization" within the meaning of D.C. Code § 28-3901(a)(15).

## PRAYER FOR RELIEF

*Wherefore*, Plaintiff Earth Island Institute prays for judgment against Defendant BlueTriton, and requests the following relief:

      A.      a declaration that BlueTriton's conduct is in violation of the CPPA;

      B.      an order enjoining BlueTriton's conduct found to be in violation of the CPPA; and

      C.      an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: August 27, 2021

                                      _____

                                        Kim E. Richman (Bar No. 1022978)

                                        Richman Law and Policy
                                        1 Bridge Street, Ste. 83
                                        Irvington, NY 10533
                                        Telephone: (212) 687-8291
                                        Facsimile: (212) 687-8292
                                        krichman@richmanlawpolicy.com

                                        *Attorney for Plaintiff*

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

EARTH ISLAND INSTITUTE

Case Number: __2021 CA 003027 B__

vs

Date: _8/27/2021_

BLUETRITON BRANDS, FORMERLY
NESTLÉ WATERS NORTH AMERICA

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)*  Kim E. Richman | Relationship to Lawsuit |
|---|---|
| Firm Name:  Richman Law & Policy | ☒ Attorney for Plaintiff |
| Telephone No.:             Six digit Unified Bar No.: (212) 687-8291                1022978 | ☐ Self (Pro Se)  ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury          ☐ 6 Person Jury          ☒ 12 Person Jury

Demand: $ _N/A_                                    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____ Judge: _____ Calendar #: _____

Case No.: _____ Judge: _____ Calendar#: _____

---

NATURE OF SUIT:          *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property |      Over $25,000 Pltf. Grants Consent |      Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees |      Under $25,000 Pltf. Grants Consent |      Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| |      Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander |      Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☒ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud |      Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
   (DC Code § 11-941)
☐ 10  Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☐ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
   (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
   Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
   Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
   Judgment [ D.C. Code §
   2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
   42-3301, et seq.)

☐ 21 Petition for Subpoena
   [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
   (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

_8/27/2021_____
Date

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
CIVIL DIVISION Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

EARTH ISLAND INSTITUTE
   Vs.                                    C.A. No.     2021 CA 003027 B
BLUETRITON BRANDS

### INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby** ORDERED **as follows:**

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge JASON PARK
Date:     August 31, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, November 19, 2021
Location:  Courtroom 519
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.   The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:** **(AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

> *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

**Option 2:** **(LAPTOP/ DESKTOP USERS 1):**

> Open Web Browser in Google Chrome and copy and paste following address from the next page:
> https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3:** **(LAPTOP/ DESKTOP USERS 2):**

> Open Web Browser in Google Chrome and copy and paste following address
> https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE:**  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4:** **(Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).**  After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom.  Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60