# **EXHIBIT F**

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| EARTH ISLAND INSTITUTE, 2150 Allston Way, Suite 460, Berkeley, CA, 94704,<br><br>    Plaintiff,<br><br>v.<br><br>BLUETRITON BRANDS, FORMERLY NESTLE WATERS NORTH AMERICA, 900 Long Ridge Road, Stamford, CT 06902,<br><br>    Defendant. | Case No. _____ |

**DECLARATION OF LAETITIA ALLEXANT-DELROSSI
IN SUPPORT OF BLUETRITON BRANDS' NOTICE OF REMOVAL**

I, Laetitia Allexant-DelRossi, declare under penalty of perjury as follows:

1. I am the Marketing Director – Brand Strategy & Storytelling for BlueTriton Brands, Inc. ("BlueTriton"). My responsibilities include leading marketing efforts for the company's bottled water and beverage brands. I have worked at BlueTriton since the company's inception in April 2021. Prior to that, I worked at BlueTriton's predecessor company, Nestlé Waters North America, in various marketing-related capacities since May 2006. I am of legal age and submit this declaration based upon my personal knowledge in support of Defendant BlueTriton's Notice of Removal.

2. I understand that Plaintiff in this matter seeks an injunction that may require BlueTriton to revise a number of alleged "sustainability" representations appearing primarily on BlueTriton's brand websites and social media accounts, and potentially engage in a corrective advertising campaign directed at D.C. consumers.

3. I was asked by counsel for BlueTriton to provide an estimate and breakdown of the anticipated costs to BlueTriton of complying with such an injunction. Based on my past experience

and estimates reasonably available to me, I calculate that compliance with Plaintiff's requested injunction would require expenditures well in excess of $75,000. These expenditures would take three different forms: (1) creating and implementing a new marketing campaign; (2) updating BlueTriton's websites, social media accounts, email marketing campaigns, and other digital property; and (3) engaging in a corrective advertising campaign directed at D.C. consumers.

4. First, to create and implement a new marketing campaign, BlueTriton would have to spend approximately $500,000, which includes the cost of marketing consultants, graphics experts, and other production vendors. This cost does not include media buys associated with such campaign.

5. Second, to identify and remove all challenged statements from BlueTriton's websites, social media accounts, email marketing campaigns, and other digital property, and to otherwise update the content on such platforms, BlueTriton would have to spend approximately $200,000. This cost does not include the cost to modify content on third-party websites, which BlueTriton does not control.

6. Finally, to issue other forms of corrective advertising to consumers in Washington D.C., I estimate that BlueTriton would have to make additional expenditures in excess of $100,000, which includes costs related to consultants, vendors, and media buys.

7. I therefore estimate that the combined cost of complying with Plaintiff's requested relief would greatly exceed $75,000.

I declare under penalty of perjury under the laws of the District of Columbia and the United States of America that the foregoing facts are true and correct.

Executed in Stamford, Connecticut on October 11, 2021.

_____         _____

                                    Laetitia Allexant-DelRossi